IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

KATHY WOOLF, for self, and o/b/o T.W.,
                          Plaintiff,

            vs.                              Civil Action No.
                                             7:05-CV-984 (LEK/DEP)


COMMISSIONER OF THE SOCIAL SECURITY,
                          Defendant.

_____

APPEARANCES:                         OF COUNSEL:

FOR PLAINTIFF:

CONBOY, McKAY, BACHMAN &              LAWRENCE D. HASSELER, ESQ.
KENDALL, LLP
307 State Street
Carthage, New York 13619

FOR DEFENDANT:

HON. GLENN T. SUDDABY                 WILLIAM H. PEASE, ESQ.
United States Attorney                Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York  13261-7198

OFFICE OF GENERAL COUNSEL             BARBARA L. SPIVAK, ESQ.
Social Security Administration        Chief Counsel, Region II
26 Federal Plaza
New York, New York 10278              ANDREEA LECHLEITNER, ESQ.
                                      Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

This action was commenced by Kathy Woolf on behalf of herself and her minor son, T.W., pursuant to section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  In her complaint, plaintiff seeks judicial review of an administrative determination by the Commissioner denying both her son's application for child's insurance benefits and her request for mother's insurance benefits based on the death of plaintiff's husband, Jay T. Woolf, from whom she was separated at the time.  Plaintiff maintains that the Administrative Law Judge ("ALJ") erred by finding that T.W. was not dependent on Mr. Woolf, and therefore not entitled to child's insurance benefits, and compounded the error by further finding that she, derivatively, was not entitled to mother's insurance benefits under the Act.

Having carefully reviewed the record now before the court, I find that the Commissioner's determination resulted from the application of proper legal principles, and is supported by substantial evidence.

I.    BACKGROUND

On June 18, 1992, the plaintiff gave birth to T.W.  Administrative Transcript at 14, 70.[1]  T.W.'s biological father is Claude A. Fowler, Jr.  AT 14,

---

[1]      Portions of the administrative transcript of proceedings and evidence before the agency, Dkt. No. 5, filed by the Commissioner with his answer, will be cited as "AT

70.  When T.W. was one year old, plaintiff and Mr. Woolf began living together, and were subsequently married on September 10, 1994.  AT 71.  T.W. was never formally adopted by Mr. Woolf, although the child's last name was legally changed from Firlik, his mother's maiden name, to Woolf in January of 1995.  AT 14-15, 35-36, 71.

On October 7, 2002, Mr. Woolf and the plaintiff separated.  AT 20.  A complaint seeking a divorce was filed by Mr. Woolf on October 17, 2002.  AT 16-18.  In his complaint in that proceeding, Mr. Woolf alleged that in October of 2002 plaintiff "forced [him] to move out of the marital residence so she could spend more time with her boyfriend."  AT 17.  Mr. Woolf also averred in the complaint that there were "no children born of this marriage and none are expected[,]" and requested that neither party be awarded maintenance.  AT 16-17.

In conjunction with the pending matrimonial proceeding, Mr. Woolf completed a statement of his net worth as of October 28, 2002.  AT 20-22.  In it, Mr. Woolf wrote that he and plaintiff were living in different towns.  AT 20.  When asked to state the number of dependent children under the age of twenty-one, Mr. Woolf responded "none."  *Id.*  The deceased also reported on

_____

___."

the form that at the time, he was paying no support.  AT 21.

On November 16, 2002, Mr. Woolf died as a result of cardiomegaly[2] and congenital heart disease.  AT 27.  Based upon Mr. Woolf's death, on December 9, 2002, plaintiff filed an application for child's insurance benefits on behalf of T.W., as well as an application for mother's insurance benefits on her own behalf.  AT 32-34, 35-37.  In support of those applications, plaintiff completed a prepared form entitled "Statement Regarding Contributions."  AT 30-31.  In it, plaintiff indicated that "both parents" contributed to T.W.'s support, and used their monies as one household fund.  AT 31.  The completed form went on to note the following: "We shared one account and paid our bills out of this account.  My husband's income was our main income.  [T.W.] did not receive any child support from an absent parent and there was no other income [T.W.] received."  *Id.*

During the administrative hearing held on May 17, 2004, plaintiff's counsel stated that at the time of his death, Mr. Woolf resided in Sackets Harbor, New York, while the plaintiff and T.W. were living in the "marital residence" in Watertown, New York, titled solely in Mr. Woolf's name.  AT 69-

_____

[2]       Cardiomegaly is the hypertrophy or enlargement of the heart.  *Dorland's Illustrated Medical Dictionary* 287, 859 (29th ed. 2000).

70.  Counsel also stated that Mr. Woolf provided "no financial support" to plaintiff and T.W.  *Id.*

Plaintiff testified that she and Mr. Woolf "started having trouble" in September or October of 2002, and separated in October of 2002.  AT 78. She stated that an attorney thereafter drafted a separation agreement in which it was proposed that Mr. Woolf would pay $2,000 per month to the plaintiff.  *Id.*  Mr. Woolf failed to sign the agreement, however, a circumstance which plaintiff attributes to the fact that the document "was just so brief" and unclear.  AT 78-79.  She claimed that she and Mr. Woolf agreed to use their savings for her to pay bills "until . . . [they] figured out what was going to happen."  AT 79.  Plaintiff claimed that during their separation, Mr. Woolf paid no bills because "the time really hadn't come about . . . for those bills to be active" and because she "had the savings that [they] had agreed on."  AT 80-81.

II.     PROCEDURAL HISTORY

        A.     Proceedings Before The Agency

        On December 9, 2002, Plaintiff filed an application for child's insurance benefits on behalf of T.W. and an application for mother's insurance benefits on her own behalf based on Mr. Woolf's death.  AT 27, 32-34, 35-37.  Those

applications were denied, both initially and on reconsideration.  AT 38-40, 41-43, 45-48.

At plaintiff's request, a hearing was conducted on May 17, 2004 before ALJ Barry Anderson.  AT 66-84.  During the hearing the plaintiff, who was represented by counsel, testified on her own behalf.  *See id.*

Following the hearing, ALJ Anderson issued a decision dated June 24, 2004.  AT 8-13.  In reaching his decision, ALJ Anderson conducted a *de novo* review of the record, leading him to conclude that T.W. was not entitled to child's insurance benefits, and plaintiff was not entitled to mother's insurance benefits.  *Id.*  Those determinations were based upon the ALJ's finding that at the time of Mr. Woolf's death, T.W. was not dependent upon him, and thus did not meet a critical requirement for entitlement to child's benefits under the Act.

ALJ Anderson's opinion became a final determination of the agency when, on July 1, 2005, the Social Security Administration Appeals Council denied plaintiff's request for review of that decision.  AT 3-6.

B.    This Action

Plaintiff commenced this action on August 5, 2005.  Dkt. No. 1.  Issue was subsequently joined by the Commissioner's filing of an answer, together

with an administrative transcript of the proceedings and evidence before the agency, on October 5, 2005.  Dkt. Nos. 4, 5.  With the filing of plaintiff's brief on October 28, 2005, Dkt. No. 6, and that on behalf of the Commissioner on November 18, 2005, Dkt. No. 8, this matter is now ripe for determination, and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(d).  *See also* Fed. R. Civ. P. 72(b).[3]

III.   DISCUSSION

      A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y.

---

[3]      This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., then-Chief United States Magistrate Judge, on January 28, 1998, and later amended and reissued by then-Chief District Judge Frederick J. Scullin, Jr., on September 19, 2001.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).

Where there is reasonable doubt as to whether the Commissioner applied the

proper legal standards, his decision should not be affirmed even though the

ultimate conclusion reached is arguably supported by substantial evidence.

*Martone*, 70 F. Supp. 2d at 148.  If, however, the correct legal standards have

been applied and the ALJ's findings are supported by substantial evidence,

those findings are conclusive, and the decision should withstand judicial

scrutiny regardless of whether the reviewing court might have reached a

contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v.*

*Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp. 2d

312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

    The term "substantial evidence" has been defined as "'such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427

(1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.

Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).

To be substantial, there must be "'more than a mere scintilla'" of evidence

scattered throughout the administrative record.  *Id.*; *Martone*, 70 F. Supp. 2d

at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's

-8-

findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed. 42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148. In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning. *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)). A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level. *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991). Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings

before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

     B.     The Evidence in This Case

          1.     Child's Insurance Benefits

The Social Security Act entitles a child of an individual who dies fully or currently insured to child's insurance benefits if (1) the child has filed an application for such benefits; (2) the child was unmarried at the time of filing, and (i) had not attained age eighteen or was a full-time student and had not attained age nineteen or (ii) was under a disability, as defined in 42 U.S.C. § 423(d), which began before attainment of age twenty-two; and (3) the child was dependent upon the insured at the time of the insured's death.  42 U.S.C. § 402(d)(1); *see also* 20 C.F.R. § 404.350(a).

In his decision, ALJ Anderson acknowledged the existence of a sufficient relationship between the non-adopted stepson of Mr. Woolf and the deceased wage earner to trigger the provisions of 42 U.S.C. § 423(d).  This finding, which the parties do not dispute, *see* Plaintiff's Brief (Dkt. No. 6) at 4; Defendant's Brief (Dkt. No. 8) at 7 n.1, is well-supported, since stepchildren are considered children for purposes of determining entitlement to child's

insurance benefits.  20 C.F.R. § 404.357 ("You may be eligible for benefits as the insured's stepchild if, after your birth, your natural or adopting parent married the insured.").

Pivotal to the ALJ's denial of benefits is his finding that despite this relationship, T.W. was not dependent on Mr. Woolf at the time of his death. AT 12.  The ALJ based that determination in part upon his finding that between October of 2002 and November 16, 2002, T.W. and Mr. Woolf lived in different residences, and T.W. received no child support from Mr. Woolf. *Id.*  Plaintiff challenges the ALJ's finding of non-dependency, asserting that T.W. was in fact dependent on Mr. Woolf since he was receiving at least one-half of his support from Mr. Woolf at the time of his death.  Plaintiff's Brief (Dkt. No. 6) at 5-7.

The pertinent regulation provides as follows:

If you are the insured's stepchild, as defined in § 404.357, you are considered dependent upon him or her if you were *. . . receiving at least one-half of your support from him or her at one of these times–*

> (a) When you applied;
> (b) When the insured died; or
> (c) If the insured had a period of disability that lasted until his or her death or entitlement to disability or old-age benefits, at the beginning of the period of disability or at the time the insured became entitled to benefits.

-11-

20 C.F.R. § 404.363 (emphasis added).  An insured provides one-half of a

child's support if he or she makes regular contributions for the child's ordinary

living costs, in amounts equaling or exceeding one-half of those costs, and

any income available to the child from other sources represents one-half or

less of the child's ordinary living costs.[4]  20 C.F.R. § 404.366(b).

To meet the test for dependency under the regulations, an insured must

also have provided one-half support for a "reasonable period."  20 C.F.R. §

404.366(b).  Ordinarily, a reasonable period is considered to encompass the

twelve-months immediately preceding the time when the one-half support

requirement must be met under § 404.363.  *Id.*  Under certain circumstances,

however, a shorter period will be considered reasonable.  *Id.*  In this regard,

the regulations provide that a shorter period may qualify if

> *[a]t some point within the 12-month period, the insured . . . stops*
> *providing at least one-half of [the child's] support on a permanent*
> *basis and this is a change in the way [the child] had been*
> *supported up to then.*  In these circumstances, the time from the
> change up to the end of the 12-month period will be considered a
> reasonable period, unless paragraph (b)(2) of this section
> applies.[5] *The change in [the child's] source of support must be*

---

[4]      Ordinary living costs include expenses for a child's food, shelter, routine
medical care, and similar necessities.  20 C.F.R. § 404.366(b).

[5]      Paragraph (b)(2) provides:

The insured provided one-half or more of your support for at least 3 months
of the 12-month period, *but was forced to stop or reduce contributions*

-12-

*permanent and not temporary.*  Changes caused by seasonal employment or customary visits to the insured's home are considered temporary.

20 C.F.R. § 404.366(b)(1) (emphasis added).

As the ALJ noted, Mr. Woolf and plaintiff separated on October 7, 2002, and Mr. Woolf filed for divorce on October 17, 2002.  AT 11; *see* AT 16-18, 20.  In the divorce complaint, Mr. Woolf alleged that plaintiff "forced him to move out of the marital residence."  AT 17.  He also stated that there were "no children born of this marriage and none are expected," and requested that neither party be awarded maintenance.  AT 17.

The ALJ also pointed out that Mr. Woolf had provided no support payments since October of 2002.  AT 11.  This finding is buttressed by Mr. Woolf's statement of net worth, in which he indicated that he had no dependent children and that he was paying no support.  AT 20, 21.  Similarly, at the hearing plaintiff's counsel stated that plaintiff and T.W. received "*no financial support*" from Mr. Woolf.  AT 70 (emphasis added).  Plaintiff herself stated that from the time Mr. Woolf filed for divorce to the time of his death,

---

*because of circumstances beyond his or her control*, such as illness or unemployment, and no one else took over the responsibility for providing at least one-half of your support on a permanent basis . . . .

20 C.F.R. § 404.366(b)(2) (emphasis added).  Here, nothing indicates that Mr. Woolf was forced to stop or reduce contributions because of circumstances beyond his control such as illness or unemployment.

Mr. Woolf paid no bills.  AT 80-81.  While plaintiff explained that Mr. Woolf

paid no bills because the bills were not "active," a letter dated October 29,

2002 to plaintiff's then-counsel from Mr. Woolf's counsel suggests otherwise.

AT 23, 80.  That letter reflects that plaintiff had forwarded a statement for a

mortgage payment to Mr. Woolf, apparently suggesting that he should make

the payment.  AT 23.  In a letter addressing the matter, Mr. Woolf's counsel

stated the following:

> [Plaintiff] is exclusively occupying the marital residence [and] she
> should be responsible for the payment of all expenses and debts
> related thereto.  If [plaintiff] is unwilling or unable to maintain the
> marital residence she should vacate the residence so Mr. Woolf
> may occupy the same.

*Id.*

Plaintiff's own testimony at the administrative hearing tends to confirm

that Mr. Woolf was not providing financial support to plaintiff.  Plaintiff testified

that Mr. Woolf refused to sign a separation agreement which proposed

paying $2,000 per month to plaintiff.  AT 78-79.

Despite these clear indications otherwise, plaintiff nonetheless now

argues that Mr. Woolf was providing one-half support because plaintiff and

T.W.'s "bills and living expenses were fully paid" using the joint account held

-14-

by plaintiff and Mr. Woolf.[6]  Plaintiff's Brief (Dkt. No. 6) at 6.  Plaintiff, however, testified at the hearing that no bills became "active" after Mr. Woolf filed for divorce.  AT 80.  Moreover, the October 29, 2002 letter to plaintiff's then-counsel from Mr. Woolf's attorney indicates that plaintiff did not pay a recent mortgage bill, instead forwarding the bill to Mr. Woolf.  AT 23.

Plaintiff also argues that Mr. Woolf in essence was providing one-half support, since she and T.W. were living in the "marital home," which was titled solely in Mr. Woolf's name.  Plaintiff's Brief (Dkt. No. 6) at 5-6.  As noted, however, in the October 29, 2002 letter to plaintiff's then-counsel from Mr. Woolf's counsel, Mr. Woolf maintained that plaintiff "should be responsible for the payment of all expenses and debts" related to the marital residence.  AT 23.

Based on the foregoing, I find that the ALJ properly examined a period of time that was shorter than the normally-prescribed twelve-month period, inasmuch as Mr. Woolf made a permanent change in his support of T.W. Similarly, I conclude that the ALJ's finding that T.W. was not dependent on Mr. Woolf at the time of his death was compliant with controlling legal principles, and is supported by substantial evidence.  Accordingly, under the

---

[6]     The court notes that plaintiff does not specify what "bills and living expenses" were fully paid during this period.

regulations, T.W. was not entitled to child's insurance benefits.

### 2.   Mother's Insurance Benefits

The surviving spouse of an insured may be entitled to mother's or

father's insurance benefits if such surviving spouse . . . --

(A) is not married,

(B) is not entitled to a surviving spouse's insurance benefit,

(C) is not entitled to old-age insurance benefits, or is entitled to
old-age insurance benefits each of which is less than
three-fourths of the primary insurance amount of such individual,

(D) has filed [an] application for mother's or father's insurance
benefits, or was entitled to a spouse's insurance benefit on the
basis of the wages and self-employment income of such
individual for the month preceding the month in which such
individual died,

(E) at the time of filing such application has in his or her care a
child of such individual entitled to a child's insurance benefit . . . .

42 U.S.C. § 402(g)(1); *see also* 20 C.F.R. § 404.339(e).

Here, the ALJ found that plaintiff was not entitled to mother's insurance

benefits because she did not have in her care a child entitled to child's

insurance benefits.  AT 12.  Since the lynchpin of the finding that plaintiff

does not qualify for benefits is the ALJ's determination that T.W. was not

entitled to child's insurance benefits, and that conclusion is amply supported

by substantial evidence, it therefore follows that his finding that plaintiff was

-16-

not entitled to mother's insurance benefits was proper.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

A review of the record in this case, conducted applying the requisite deferential standard, reflects that the ALJ applied the proper legal standards to the evidence in the record, and that his finding is based upon substantial evidence in the record.  Simply stated, the ALJ's conclusion that T.W. was not dependent on Mr. Woolf at the time of the wage earner's death was supported by substantial evidence.  Accordingly, the ALJ properly found that T.W. was not entitled to child's insurance benefits, and that plaintiff, derivatively, was not entitled to mother's insurance benefits.

Based on the foregoing, it is hereby

RECOMMENDED, that defendant's motion for judgment on the pleadings be GRANTED, that the Commissioner's determination of no disability be AFFIRMED, and that plaintiff's complaint in this action be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.   28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

Dated:      November 30, 2007
            Syracuse, New York


David E. Peebles
U.S. Magistrate Judge